UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>P.C. Hoag & Co., Inc.</u>

    v.                                           Civil No. 15-cv-498-AJ
                                            Opinion No. 2016 DNH 061

<u>Man Lift Mfg., Co.,</u>
<u>All Terrain Aerial Lifts, and</u>
<u>A-1 Expert Tree Service, Inc.</u>


**O R D E R**

The plaintiff P.C. Hoag & Company ("P.C. Hoag") brings this action against Man Lift Manufacturing ("Man Lift"), All Terrain Aerial Lifts ("ATAL"), and A-1 Expert Tree Service ("A-1") (collectively, the "defendants") asserting various claims stemming from the purchase of an aerial lift that P.C. Hoag contends is defective. Man Lift moves to dismiss the claims advanced against it for lack of personal jurisdiction. Doc. no. 7.[1] The plaintiff objects. Doc. no. 8. For the reasons stated below, the motion is denied.


**Standard of Review**

When personal jurisdiction is contested, the plaintiff

---

[1] ATAL and A-1 have not been served. On March 7, 2016, P.C. Hoag filed an assented-to motion to extend the deadline to serve these defendants. Doc. no. 12. The court granted the motion in an endorsed order.

bears the burden of establishing that the court has jurisdiction over the defendant. Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997). In cases in which an evidentiary hearing is not held, "a plaintiff need only to make a prima facie showing that [the] defendants are subject to personal jurisdiction." Presby Patent Trust v. Infiltrator Sys., Inc., No. 14-CV-542-JL, 2015 WL 3506517, at *2 (D.N.H. June 3, 2015) (quoting Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003)).

"In making a prima facie showing of jurisdiction, a plaintiff need not, and indeed may not, rely only on the allegations in the complaint." Sturm, Ruger & Co. v. Armscor Precision Int'l, Inc., No. 14-CV-194-SM, 2015 WL 4563005, at *1 (D.N.H. July 28, 2015). "Rather, he or she must adduce evidence of specific facts that support jurisdiction." Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211, 215 (D.N.H. 2000) (quotation marks omitted). "In reviewing the facts, [the court] take[s] the plaintiff's evidentiary proffers as true and construe[s] them in the light most favorable to the plaintiff's claim, and [will] also consider] uncontradicted facts proffered by the defendant." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).

**Background**

The relevant facts, construed in the light most favorable to P.C. Hoag, are as follows.

P.C. Hoag is a New Hampshire corporation with its principal place of business in New Hampshire.  Hoag Aff. ¶ 1, doc. no. 8-2.  P.C. Hoag provides arborist services throughout New Hampshire.  Id.  Man Lift is a Nebraska corporation with a manufacturing facility in Wisconsin that constructs aerial lifts.  Dunn Aff. ¶ 1, doc. no. 7-2.  A-1 is a California corporation.  Compl. ¶ 3, doc. no. 1-1.  ATAL is a division of A-1.  Id. ¶ 4.

In January 2012, Peter Hoag, the president of P.C. Hoag, contacted ATAL about purchasing an aerial lift.  Pl.'s Ex. A at 3, doc. no. 8-3.  P.C. Hoag contends that the ATAL representative held himself out to be an authorized agent for Man Lift.  Hoag Aff. ¶ 2.  After some negotiations and delays, the ATAL representative sent a subject written purchase and sales agreement for an A70 TDI Track Drive Aerial Lift ("aerial lift") to P.C. Hoag's place of business in New Hampshire.  Pl.'s Ex. A at 2-3, Hoag Aff. ¶ 3.  In November 2012, P.C. Hoag purchased the aerial lift.  Hoag Aff. ¶ 2.

The aerial lift purchased by P.C. Hoag was made in Man Lift's Wisconsin facility.  Pl.'s Ex. A at 3; Hoag Aff. ¶ 2;

3

Dunn Aff. ¶ 1.  Around the time P.C. Hoag purchased the aerial lift, Man Lift contacted Hoag directly to inform him that the lift would be ready by November 5th.  Pl.'s Ex. A at 3.  Soon after, Man Lift contacted Hoag again to inform him that the lift would not be available until November 14th.  Id.  On November 14th, Hoag traveled from New Hampshire to Wisconsin to learn how to use the aerial lift.  Id.  The aerial lift was shipped to New Hampshire later that month.  Hoag Aff. ¶ 3.

   Man Lift contends that it did not contract to sell the aerial lift to P.C. Hoag.  Dunn Aff. ¶ 2.  Instead, Man Lift alleges it provided a quote to ATAL for two aerial lifts with no knowledge as to the ultimate buyers of the lifts.  Id. ¶ 5.  One of the two aerial lifts delivered by Man Lift to ATAL was purchased by P.C. Hoag.  Id.  Man Lift further claims that it has no formal relationship or common ownership with ATAL or control over ATAL's actions.  Id. ¶ 3.

    P.C. Hoag experienced a number of substantial problems with the lift shortly after it was delivered to New Hampshire.  Hoag Aff. ¶ 4.  P.C. Hoag cites for example that the aerial lift was difficult to start and the lift's engine, outrigger, battery, tool circuit, paint, and hour meter were dysfunctional.  Id.  In February 2013, P.C. Hoag reported these issues to Man Lift.  Id. ¶ 5.  A Man Lift technician from Wisconsin traveled to New

4

Hampshire to attempt to examine and repair the machine. Id.; Dunn Aff. ¶ 5. Soon after, P.C. Hoag contends that the lift failed again. Hoag Aff. ¶5. P.C. Hoag alleges that additional cracks were later found in the lift's track's axles. Id. In October 2013, P.C. Hoag shipped the lift back to Man Lift's Wisconsin manufacturing facility for repairs. Dunn Aff ¶ 5; Pl.'s Ex. A at 4. Man Lift shipped the lift back to New Hampshire the next month. Pl's Ex. A at 4.

P.C. Hoag alleges additional issues were found with the lift in December 2013 and January 2014. Hoag Aff. ¶ 5. In March 2014, Hoag wrote a letter to Man Lift chronicling P.C. Hoag's issues with the lift and providing notice that it intended to revoke its acceptance of the lift. Pl.'s Ex. A. Two weeks later, Joe Banks, a vice president of Man Lift, responded to Hoag's letter. Pl.'s Ex. B at 2, doc. no. 8-4. Banks's letter to Hoag stated that "[a]lthough you didn't purchase the machine from Man Lift we are the manufacturer and we've been willing to deal with you directly." Id. The letter further stated that Man Lift had no "intention of accepting the [lift] back[,]" however, it was willing to "dispatch technicians or help find local support if necessary." Id.

In May 2014, a second Man Lift technician traveled to New Hampshire to repair the lift. Hoag Aff. ¶ 6. According to P.C.

5

Hoag, the repairs were again unsuccessful.  Id.  In the summer of 2014, the same Man Lift technician returned to New Hampshire for additional repairs.  Id.  Yet, once again, P.C. Hoag alleges that the lift remained inoperable.  Id.  In August 2014, P.C. Hoag contends that Man Lift made arrangements with a mechanic shop in North Conway, New Hampshire to provide additional work on the lift.  Id. ¶ 7.

Based on the foregoing allegations, P.C. Hoag filed suit against Man Lift, A-1, and ATAL in six counts: strict liability (count I); negligence (count II); breach of express warranty (count III); breach of implied warranty (count IV); breach of contract (count V); and revocation of acceptance (count VI).  Compl. ¶¶ 10-39.  In December 2015, Man Lift removed P.C. Hoag's action to this court.  Doc. no. 1.

## Discussion

Man Lift argues in its motion to dismiss that P.C. Hoag has failed to plead facts sufficient to establish that this court has personal jurisdiction over it.  Specifically, Man Lift contends that P.C. Hoag's claims do not arise out of any contacts it had with New Hampshire and any contacts it had with New Hampshire were initiated by P.C. Hoag.  Man Lift

6

additionally claims that is would be burdensome to appear in the state.

In its objection, P.C. Hoag alleges its claims arise from Man Lift's attempts to satisfy its warranty obligations and negligent attempts to repair the aerial lift's defects in New Hampshire.  P.C. Hoag further argues that Man Lift's contacts with it were voluntary, therefore subjecting it to jurisdiction in New Hampshire.

"Whether a court has personal jurisdiction in a diversity action over a nonresident defendant depends on whether both the forum state's long-arm statute and the due process requirements of the United States Constitution are satisfied." GE Mobile Water, Inc. v. Red Desert Reclamation, LLC, No. 13-CV-357-PB, 2014 WL 900715, at *2 (D.N.H. Mar. 7, 2014) (citing Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 29 n.1 (1st Cir. 2010)).  "The New Hampshire Supreme Court has interpreted the New Hampshire long-arm statute as affording jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005) (quotation marks omitted). "Therefore, the court need only determine whether the application of personal jurisdiction comports with Fourteenth Amendment due process requirements."

Campbell v. CGM, LLC, No. 15-CV-88-JD, 2015 WL 4424018, at *3 (D.N.H. July 20, 2015).

"The Fourteenth Amendment requires that a defendant have sufficient 'minimum contacts' with the forum such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" R & R Auction Co., LLC v. Johnson, No. 15-CV-199-PB, 2016 WL 845313, at *3 (D.N.H. Mar. 2, 2016) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The inquiry into minimum contacts is also highly idiosyncratic, involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

There are two categories of personal jurisdiction: general and specific. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). In reviewing the pleadings, it does not appear that P.C. Hoag alleges general jurisdiction. Thus, the court will only analyze whether Man Lift is subject to this court's personal jurisdiction.

The First Circuit follows a three-prong test to determine whether specific personal jurisdiction exists:

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities;

8

> (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

C.W. Downer & Co., 771 F.3d at 65 (quotation marks and brackets omitted). P.C. Hoag must satisfy each of these three requirements "to support a finding of specific jurisdiction." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999). The court considers each prong in turn.

I. **Relatedness**

"To satisfy the relatedness prong, the cause of action must arise from or relate to the defendant's contacts with the forum state." Bluetarp Fin., Inc. v. Matrix Const. Co., 709 F.3d 72, 80 (1st Cir. 2013). Relatedness "is a flexible, relaxed standard which focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (internal citation and quotation marks omitted).

Because "specific jurisdiction is tied to the particular claim asserted, a nonresident defendant's contacts are evaluated separately for contract and tort claims." Lucerne Farms v. Baling Techs., Inc., 226 F. Supp. 2d 255, 258 (D. Me. 2002) (citing Phillips Exeter, 196 F.3d at 289). Here, P.C. Hoag

9

alleges both contract and negligence claims.  See Compl.  However, "[g]iven the underlying similarity of the contract and tort actions, the court analyzes all of [the] [p]laintiff's claims under the contracts rubric." Lucerne Farms, 226 F. Supp. 2d at 259.  Accordingly, the court will "focus on the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." C.W. Downer & Co., 771 F.3d at 66 (quotation marks omitted).  Where, as in this case, "the cause of action is for an alleged breach of contract, we ask whether the defendant's activity in the forum state was 'instrumental either in the formation of the contract or its breach.'" Adelson, 510 F.3d at 49 (quoting Philips Exeter, 196 F.3d at 289).

 Man Lift argues that P.C. Hoag's claims do not arise out of its contacts with New Hampshire because it did not participate in the negotiation or sale of the lift purchased by P.C. Hoag.  Man Lift also claims that its only contacts with New Hampshire were repairs made by a Man Lift technician in the state, phone and email conversations with P.C. Hoag, and P.C. Hoag shipping the lift from New Hampshire to Wisconsin for additional repairs.  In response, P.C. Hoag contends that its claims arise from Man Lift's contacts with New Hampshire because Man Lift took action in New Hampshire in recognition of its warranty obligations.

10

Here, there is sufficient evidence to establish relatedness to New Hampshire. The exhibits submitted concerning P.C. Hoag's negotiations with ATAL and subsequent purchase of the lift suggest some contacts between P.C. Hoag and Man Lift during the formation of the contract. In its March 2014 letter to Man Lift, P.C. Hoag stated that it purchased the lift from Man Lift, not ATAL. See Pl.'s Ex. A at 2. This marginally supports that P.C. Hoag reasonably believed that it negotiated the purchase of the lift with Man Lift. Although Man Lift disputes this claim, Dunn Aff ¶ 2, at this stage, any contested facts must be viewed in favor of P.C. Hoag. Adelson, 510 F.3d at 48. Ultimately, the subject written purchase and sale agreement for the lift was executed in New Hampshire, and, after the agreement was executed (with ATAL independently or as an agent of Man Lift), but before it was shipped, Hoag traveled from New Hampshire to Man Lift's Wisconsin facility to train with the lift. Pl.'s Ex. A at 3; Hoag Aff. ¶ 3. P.C. Hoag also alleges in an affidavit that the defendants "collectively" delivered the lift to New Hampshire, pursuant to the sales contract. Hoag Aff ¶ 3. Moreover, a significant portion of P.C. Hoag's claims stem from the failure of Man Lift's Wisconsin technician to repair the lift while in New Hampshire, an alleged violation of the lift's warranty.

Based on these facts, P.C. Hoag has minimally met its burden at this stage to show relatedness.

## II. **Purposeful Availment**

In addition to relatedness, "specific jurisdiction requires that the defendant's contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." Bluetarp Fin, 709 F.3d at 82 (quotation marks omitted). "The inquiry focuses on the defendant's intentions; the defendant's contacts with the forum state must be voluntary and deliberate, and the contacts must be of such a nature that the defendant can reasonably foresee being haled into court there." Campbell, 2015 WL 4424018, at *6 (citing Bluearp Fin, 709 F.3d at 82).

Man Lift argues that litigation in New Hampshire was not foreseeable because its only contacts with the forum were after the sale of the lift and initiated by P.C. Hoag. In response, P.C. Hoag cites its exhibits to contend that Man Lift voluntarily sent technicians to New Hampshire to repair the lift pursuant to lift's warranty and, since P.C. Hoag purchased the lift, Man Lift has expressed a desire "deal with [P.C. Hoag] directly" in New Hampshire. Pl.'s Ex. B at 1.

In an affidavit submitted by Donald Dunn, the Chairman of Man Lift, he contends that Man Lift sold two aerial lifts to ATAL without knowledge that they would be bought by P.C. Hoag or shipped to New Hampshire. Dunn Aff. ¶ 5. However, in viewing the facts in the light most favorable to the plaintiff at this early stage, it is likely Man Lift was aware that its lift would be shipped to New Hampshire and, consequently, its warranty obligations would be based in the state. Around the same time P.C. Hoag purchased the lift from ATAL, Man Lift independently contacted P.C. Hoag on at least two occasions to inform it when the lift would be ready. Pl.'s Ex. A at 3. Additionally, before the lift was shipped to P.C. Hoag's place of business in New Hampshire, Hoag traveled to Man Lift's Wisconsin facility to train with the lift. Id. Hoag's affidavit also states that the lift was "collectively" delivered by the defendants to P.C. Hoag's place of business in New Hampshire. Hoag Aff. ¶ 3.

After the lift was delivered, Man Lift sent a technician from its facility in Wisconsin to New Hampshire three different times to attempt to repair the lift. Hoag Aff. ¶ 6. On a fourth occasion, Man Lift made arrangements with a New Hampshire mechanic shop to act on behalf of Man Lift to perform remedial work on the lift. Id. ¶ 7.

Man Lift contends that, although multiple technicians traveled to New Hampshire to repair the lift, only one repair was made during the lift's one-year warranty.  At this stage, the distinction is irrelevant.  Even if additional repairs were unnecessary pursuant to the lift's warranty, "[c]ompetitive business practices may make it advantageous for out-of-state manufacturers to travel to other states to make repairs and to service the products in issue." Mesalic v. Fiberfloat Corp., 897 F.2d 696, 700-01 (3d Cir. 1990).  Irrespective of "the rights of the parties under the contract[,]" the court "must assess the contacts actually made."  Id.

Therefore, because Man Lift had knowledge that its lift would be shipped to and used in New Hampshire, sent technicians on three occasions from Wisconsin to New Hampshire to repair the lift, and arranged for a New Hampshire mechanic shop to perform repairs on behalf of Man Lift, P.C. Hoag has sufficiently demonstrated Man Lift's purposeful availment to the state.  See Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Delaware, Inc., 75 F. Supp. 3d 883, 890 (N.D. Ill. 2014) (concluding that the defendant's personal jurisdiction argument was "belied" in part "by the fact that it sent two individuals to Illinois to perform work on the [product] when it broke down . . . .  Not only does this support that [the defendant] contemplated the

14

warranty could involve work in Illinois, but it provides additional contacts.") (internal citation omitted); Premiere Credit of N. Am., LLC v. AAT Fabrication, Inc., No. 1:04CV1391-LJM-WTL, 2005 WL 1123636, at *2 (S.D. Ind. May 5, 2005) (finding that the defendant's "knowledge that the [item] would be shipped to and used in Indiana and sending two . . . employees to Indiana to perform (or attempt to perform) contractual obligations under the Contract's warranty provision, provides sufficient minimum contacts for personal jurisdiction.").

### III. Reasonableness

"Even after concluding that minimum contacts exist, personal jurisdiction may only be exercised if it would be reasonable, pursuant to a series of factors known as the 'Gestalt factors.'" Adelson, 510 F.3d 43, 51. These factors are:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). "The factors, intended to aid the court in achieving substantial justice, play a larger role in cases where

15

the minimum contacts question is very close." Adelson, 510 F.3d at 51.

As to the first factor, "the concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. Man Lift's motion does not identify a special or unusual burden for appearing in New Hampshire. Although travel from Nebraska to New Hampshire may be inconvenient, Man Lift's "circumstances are not unusual." R & R Auction Co., 2016 WL 845313, at *9. "In the modern era, the need to travel [domestically] creates no especially ponderous burden for business travelers." Pritzker, 42 F.3d at 64. Without more, this factor weighs in favor of personal jurisdiction.

The second factor also weighs in favor of personal jurisdiction. A state "has 'significant' interests in providing a convenient forum for disputes involving its citizens and in ensuring that its companies have easy access to a forum when their commercial contracts are said to be breached by out-of-state defendants." C.W. Downer & Co., 771 F.3d at 70. As a corporate citizen of New Hampshire, P.C. Hoag has an interest in bringing suit in New Hampshire. Adelson, 510 F.3d at 51.

Addressing the third factor, Man Lift contends that P.C. Hoag cannot identify any strong interests in having its case adjudicated in New Hampshire.  P.C. Hoag counters, in part, that it has an interest in litigating in New Hampshire because its witnesses are in the state.  Yet, based on the preliminary facts of this case, other key witnesses may also be in California, Nebraska, or Wisconsin.  Although this factor does not heavily support either party, P.C. Hoag's "choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."  Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995).

The remaining factors do not appear to cut for or against personal jurisdiction.  "[T]he judicial system's interest in obtaining effective resolution to a given suit will not favor either side in a personal jurisdiction dispute."  R & R Auction Co., 2016 WL 845313, at *9.  As to the final factor, the parties point to no substantive social policy favoring or discouraging personal jurisdiction.

In conclusion, P.C. Hoag has proffered just enough evidence to satisfy the relatedness and purposeful availment requirements necessary to show specific personal jurisdiction.  Because the minimum contacts question is close, the "Gestalt factors" are important in determining whether personal jurisdiction is

17

appropriate.  Adelson, 510 F.3d at 51.  Here, most of the factors support jurisdiction in New Hampshire.  Therefore, Man Lift's "contacts with [New Hampshire] constitute 'minimum contacts' in such a manner that it does not 'offend traditional notions of fair play and substantial justice' for [P.C. Hoag] to bring this case in the state."  Id. at 52.

## Conclusion

Because P.C. Hoag has met its modest burden at this stage of demonstrating that the court may exercise specific personal jurisdiction over the defendant Man Lift, Man Lift's motion to dismiss (doc. no. 7) is denied without prejudice.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

March 22, 2016

cc:   Paul M. Monzione, Esq.
      Robert J. Meagher, Esq.

18